

**Littler Mendelson, P.C.**
375 Woodcliff Drive
Suite 2D
Fairport, NY 14450

Jessica F. Pizzutelli
585.203.3403 direct
585.203.3400 main
585.203.3414 fax
jpizzutelli@littler.com

March 16, 2026

**VIA ECF**

Hon. Edgardo Ramos
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

**Re: <u>Case 1:25-cv-10275-ER – Aon Risk Services Companies, Inc. et al. v. Rampersaud et al.</u>**

Dear Judge Ramos:

We represent Plaintiffs Aon Risk Services Companies, Inc. and Aon Risk Services Northeast, Inc. ("Plaintiffs" or "Aon") in the above-referenced matter. This letter responds to Defendant Howden US Services, LLC's ("Howden") letter filed on March 6, 2026 (ECF No. 51).

<u>Background</u>

Howden seeks to relitigate threshold issues the Court has already decided. Under the heightened legal standard of Fed. R. Civ. P. 65, this Court already found that personal jurisdiction likely exists over Howden and that Aon demonstrated a likelihood of success on its claims against Howden and Defendants Anthony Rampersaud ("Rampersaud") and Nancy Montalvo ("Montalvo") (collectively with Howden, "Defendants"). Nonetheless, Howden seeks to again challenge jurisdiction and Aon's claims under the much lower pleading standard of Fed. R. Civ. P. 12. On this record, Rule 12 motion practice would be futile and a waste of party and Court resources.

As background, on December 11, 2025, Aon filed this action against Defendants and sought a Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI"). (ECF No. 1, 4). Based on Aon's Verified Complaint and other record evidence, the Court entered a TRO the next day, on December 12, 2025. (ECF No. 7). The Court then held a hearing on Aon's application for a PI on December 18, 2025, and entered a PI on December 24, 2026. (ECF No. 34).

At the PI hearing, the Court "determined that Aon met its burden to demonstrate entitlement to a preliminary injunction as to all Defendants . . . ." (ECF No. 34). Among other things, the issue of personal jurisdiction was briefed by the parties and discussed during the December 18, 2025 hearing, with the Court ultimately concluding Aon had a likelihood of success of establishing jurisdiction over Howden. (ECF No, 36, pp. 8-29, 55, 62-63). The merits of Aon's claims against Howden were also extensively briefed and argued. The Court concluded Aon demonstrated a "likelihood of success on the merits" of its Defend Trade Secrets (DTSA) claim, breach of contract claim, tortious interference

Page 2

with contract claim, and common law trade secrets claim. (ECF No. 36, p. 64). Given this procedural posture, Howden's contemplated motion to dismiss is futile, as the Court already found Aon's claims substantiated under a more exacting standard.

## Personal Jurisdiction Exists Over Howden

Howden's personal jurisdiction argument is baseless. In its letter, Howden ignores its material connections to New York ("NY") already in the record. That is, Howden orchestrated a lift-out of seven Aon employees based in NY and who continue to be based in NY as Howden employees, and transacts business in NY, including through the NY-based employees it unlawfully poached. Howden's offer letter stated a solicited employee would be "based in New York." (ECF No. 1, ¶ 64). Howden's own agreements require a NY venue for disputes with its employees—which employees now include Rampersaud and Montalvo. (*Id.*, Ex. C, § 12(b)).

This activity has an "articulable nexus" to the claims in this lawsuit, including the solicitation of NY employees and interference with Aon's NY-employee relationships (ECF No. 1, ¶¶ 116-124). It also caused harm to Aon in NY (i.e., the loss of an entire team of NY employees and future new revenue). This is more than enough to establish personal jurisdiction under the CPLR §§ 302(1)-(3) factors. *See Khan Funds Mgmt. Amer., Inc. v. Nations Tech.*, 2025 WL 1003964, at *12 (S.D.N.Y. Mar. 31, 2025) (finding personal jurisdiction where defendant allegedly "recruited" individuals to work in NY, "coordinated" efforts to target an individual in NY, and "directed individuals—including those physically present in New York—to act in furtherance of the Enterprise's goals."); *Am. Integrated Sec. Grp., Inc. v. Terra Sound Tech. LLC*, 2023 WL 6308014, at *6 (E.D.N.Y. Sept. 28, 2023) (denying motion to dismiss for lack of personal jurisdiction, and finding "plaintiffs have sufficiently pled… that the defendants intentionally targeted [plaintiff's] New York employee").

Moreover, upon commencing employment with Howden, Rampersaud began soliciting Aon clients. (*See* ECF No. 4-4 ¶ 12; ECF No. 4-2 ¶¶ 10-11; ECF No. 4-1 ¶ 19). As Rampersaud is now working for Howden in NY, his client outreach was necessarily for service by Howden in NY. Even after suit was filed, Rampersaud texted yet another Aon client and provided the client with his new cell phone number. (*See* ECF No. 28 ¶ 3). Another solicited client is also located in NY. (*Id.* ¶ 4). These facts independently support personal jurisdiction. *See Marsh & McLennan Agency LLC v. Oldenburg et al.*, 2025 WL 3442819, at *6 (S.D.N.Y. Dec. 1, 2025) ("MMA has provided clear evidence of New York-directed conduct: the alleged poaching of a New York client from MMA to Alliant. This is sufficient New York-directed conduct to warrant personal jurisdiction over Alliant.").

## Aon Adequately Pled Its Claims Against Howden

Likewise, Aon's claims against Howden are more than adequately alleged. First, Aon adequately pled its federal and state trade secrets claims. In its Complaint, Aon identifies information taken by Defendant that easily qualifies as trade secrets, including client lists, revenue projections, business information, and so on. At a minimum, Howden acquired that information by improper means. "Improper means" includes theft (printing/emailing), misrepresentation (lies regarding their activities), and breach of a duty to maintain secrecy (ECF No. 1, Exhibits A and B § 3(a)). *See* 18 U.S.C.A. § 1839(6). Such materials remained in Rampersaud's and Montalvo's possession as current Howden employees, and Howden had "reason to know that the trade secret was acquired by improper means.," 18 U.S.C.A. § 1839(5)(A). Howden also used Aon information that Rampersaud concedes is "Top Secret" to solicit other Aon employees. *Id.* § 1839(5)(B).

Page 3

Second, Aon's tortious interference claim is adequately pled. Howden does not dispute that it interfered with Rampersaud's covenants. Instead, Howden challenges only the enforceability of the customer non-solicitation covenant on the narrow ground that it allegedly, per Howden, applies to "clients that have left Aon within the last year *which were completely unrelated to Rampersaud's employment with Aon.*" (ECF No. 51 at 3) (emphasis added). Howden misreads Rampersaud's covenant, which actually prohibits Rampersaud's solicitation of Aon clients or clients within the last year of Rampersaud's employment, *to the extent that Rampersaud provided services to the client or supervised the provision of services to the client, had a business relationship with the client, or on whose account Rampersaud worked or became familiar during the last two years of his employment.* (ECF No. 1, Exhibit A, § 1(b)). Covenants (like Rampersaud's) that are limited to current or former clients with whom the employee had meaningful contact are routinely enforced in NY. In any event, Howden's request is improper, as courts ordinarily do not determine restrictive covenants' enforceability on motions to dismiss. *See, e.g., Installed Bldg. Prods., LLC v. Cottrell,* 2014 WL 3729369, at *6 (W.D.N.Y. July 25, 2014) (finding court could not determine enforceability of covenant at motion to dismiss).

Third, Howden argues that Aon fails to state a claim for aiding and abetting Rampersaud's breach of fiduciary duties because "the Complaint focuses solely on the conduct of Rampersaud and Montalvo, without any substantive allegation of any act by Howden." (ECF No. 51 at 3). Howden ignores the well-pled allegations in the Complaint that Howden worked with Rampersaud, while he was employed by Aon and owed a duty to Aon, to recruit a group of Aon employees. (ECF No. 1 ¶ 134). Howden also openly accepted information from Rampersaud about Aon employees while Rampersaud was employed by Aon, and then used that information to improperly target other Aon employees. (*Id.*). In short, Aon has adequately alleged that Howden knew Rampersaud was breaching his duties and provided substantial assistance to him in doing so.

Fourth, Howden argues it cannot be liable for tortious interference with economic advantage based on its efforts to hire Aon's employees. Not so. *Installed Bldg.,* 2014 WL 3729369, at *10. Howden's cited case, *Rose Leaf Cleaning, Inc. v. Sonder Hosp. USA, Inc.,* No. 22 CIV. 7462 (JHR), 2024 WL 3937600, at *12 (S.D.N.Y. Aug. 26, 2024), is factually inapposite.

Finally, Aon's unfair competition claim is adequately pled because, as detailed above, Aon sufficiently alleged that Howden improperly acquired trade secrets (and confidential information). In addition, New York courts hold that a defendant engaging in or encouraging disloyal conduct in furtherance of an employee raid constitutes unfair competition. *See McRoberts Protective Agency, Inc. v. Lansdell Protective Agency, Inc.,* 61 A.D.2d 652, 654-55 (N.Y. Sup. Ct. App. Div. 1978) (finding unfair competition claim established based on raid of plaintiff's workforce involving disloyal conduct by supervisors still employed by plaintiff and whom other defendants were aware were acting disloyally).

For these reasons and others, Howden's contemplated motion is meritless.

Respectfully submitted,

*/s/ Jessica F. Pizzutelli*

Jessica F. Pizzutelli, Esq.

cc:    All Counsel of Record (via ECF)